# United States Court of Appeals

## For the Eighth Circuit

_____

No. 25-1577

_____

Wilbur-Ellis Company

*Plaintiff - Appellant*

v.

Josh Gompert; Aaron Petersen; James Kunzman; Chad Mueller

*Defendants - Appellees*

_____

No. 25-1682

_____

Wilbur-Ellis Company

*Plaintiff - Appellee*

v.

Josh Gompert; Aaron Petersen; James Kunzman; Chad Mueller

*Defendants - Appellants*

_____

Appeals from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: March 17, 2026
Filed: July 7, 2026
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Wilbur-Ellis Company (Wilbur-Ellis) sued four of its former employees—Josh Gompert, Aaron Petersen, James Kunzman, and Chad Mueller (collectively, the Employees), alleging breach of the duty of loyalty, violations of state and federal trade secrets laws, and tortious interference with its business relationships. During discovery, the district court[1] denied several of Wilbur-Ellis's discovery-related motions. Following discovery, the district court denied Wilbur-Ellis's request to stay its summary judgment decision, and it granted summary judgment to the Employees on most of Wilbur-Ellis's claims. Wilbur-Ellis now appeals the district court's denials of its discovery-related motions and its request to stay summary judgment as well as the grant of partial summary judgment to the Employees. The Employees, on the other hand, cross-appeal the district court's decision not to grant summary judgment in full. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Wilbur-Ellis is a company specializing in agricultural products, services, and technologies. On August 13, 2021, the Employees told Wilbur-Ellis they were resigning from the company. Wilbur-Ellis placed the Employees on inactive employment status shortly thereafter, but it paid them until their resignation was formalized two weeks later, on August 27th. Meanwhile, on or around August 16th, the Employees began working for J.R. Simplot Company (Simplot), Wilbur-Ellis's

_____

[1]The Honorable Robert F. Rossiter, Jr., Chief Judge, United States District Court for the District of Nebraska.

competitor, thus receiving income from both companies until August 27th. At least 11 employees in total moved from Wilbur-Ellis to Simplot on or around August 2021.

Wilbur-Ellis sued Gompert and Petersen on September 1st—four days after they left the company—alleging breach of the duty of loyalty, misappropriation of trade secrets under the federal Defend Trade Secrets Act (DTSA) and the Nebraska Trade Secrets Act (NTSA), and tortious interference with its business relationships. On September 15th, Wilbur-Ellis filed an amended complaint that added Kunzman and Mueller as additional defendants.

This case's procedural history is complex. Because Wilbur-Ellis appeals a number of orders issued during discovery as well as the district court's summary judgment order, we list them here chronologically.

A.

Near the beginning of discovery, pursuant to the local rules,[2] Wilbur-Ellis gave the Employees notice of its intent to compel discovery from Simplot, the Employees' new employer and a third party to this case. The Employees objected to Wilbur-Ellis's notice of intent in May 2022. At a discovery conference later that month, the magistrate judge instructed Wilbur-Ellis to seek discovery from the Employees first instead of Simplot, noting that it was "backwards" to seek discovery from a third party first and that it seemed unfair for Simplot to face a "massive litigation issue just because [it] hired the [Employees]." Although Wilbur-Ellis initially stated it understood the magistrate judge's instruction, it nevertheless filed

---

[2]Under the Local Rules for the District of Nebraska, a party cannot issue a subpoena on a nonparty without first giving the adverse party notice. D. Neb. Civ. R. 45.1(a). The adverse party then has seven days to object in writing to the proposed subpoena. Id. at 45.1(b). "No subpoena may be issued for documents . . . whose inspection or production is contested under this rule until the parties resolve the objections." Id.

a motion four months later asking the magistrate judge to overrule the Employees' objection to its notice of intent to subpoena Simplot.

Before ruling on the motion, the magistrate judge issued a text order stating that the parties could not file a motion to compel "without first contacting the . . . magistrate judge to set a conference for discussing the parties' dispute." The magistrate judge also ordered Wilbur-Ellis to file a document "disclos[ing], with specificity, the trade secrets it alleges were misappropriated." Wilbur-Ellis complied with the disclosure order without objection, producing a six-page document that described its alleged trade secrets with phrases like "[d]ocuments and information regarding Wilbur-Ellis's business and market strategy," "[d]ocuments and information relating to Wilbur-Ellis's customers," and "nonpublic customer proposals, pricing and rebate data."

After reviewing Wilbur-Ellis's disclosure, the magistrate judge denied Wilbur-Ellis's motion to overrule the Employee's objection to the proposed subpoena, citing numerous concerns. For one, the magistrate judge was concerned that Wilbur-Ellis was merely trying to conduct a "'fishing expedition' on a third-party competitor," and it expressed skepticism towards Wilbur-Ellis's disclosure document, which "apparently claim[ed] that everything [the Employees] encountered in their positions at Wilbur-Ellis was a trade secret." Addressing a motion by the Employees to lift restrictions on the disclosure document, the magistrate judge observed that the document only contained "general categories of information and descriptions" and that "[w]ith the exception of three customer names, the filing does not contain material that implicates confidentiality to the extent necessary to overcome the strong presumption of public access to court documents." The magistrate judge further noted that Wilbur-Ellis had not exhausted its efforts to obtain discovery. Ultimately finding that Wilbur-Ellis's disclosure "[did] not identif[y] any specific characteristics of the allegedly misappropriated trade secrets," the magistrate judge denied Wilbur-Ellis's motion to overrule the Employees' objection to the proposed subpoena.

-4-

Wilbur-Ellis objected to the magistrate judge's order before the district court, but the district court overruled its objection and affirmed the order. Echoing the magistrate judge's observations, the district court agreed that "the categories of possible trade secrets known . . . are much too broad to warrant third-party discovery at this point." The district court also noted that "the magistrate judge identified a 'growing consensus' of courts that require a party alleging misappropriation of trade secrets to identify those trade secrets with a[t] least some level of specificity before discovery." While the district court clarified that it "need not definitively decide whether a plaintiff alleging misappropriation of trade secrets must always identify those trade secrets with reasonable particularity," it concluded that, given the numerous concerns with Wilbur-Ellis's instant discovery request, "it was reasonable for the magistrate judge to require it here."

B.

After losing its initial bid to compel third-party discovery from Simplot, Wilbur-Ellis moved to compel discovery from the Employees themselves. However, the magistrate judge noted that Wilbur-Ellis did not abide by the court's requirement of a conference with the magistrate judge before filing a motion to compel, so she denied its motion on that basis. The magistrate judge also found that Wilbur-Ellis's motion failed on the merits, as it "failed to . . . adequately identify the trade secrets at issue, and/or provide the court with a sufficient argument to adequately evaluate its motion." The magistrate judge further noted that "Wilbur-Ellis [did] not diligently pursue[] receipt of discovery," as it did not file its motion until roughly seven months after the defendants' initial discovery responses. When Wilbur-Ellis objected to the magistrate judge's ruling, the district court affirmed, pointing to Wilbur-Ellis's failure to conference with the magistrate judge and the fact that magistrate judges have broad discretion in managing discovery.

## C.

In March 2024, the Employees each individually moved for summary judgment. In its combined response to the Employees' motions, Wilbur-Ellis requested that the district court stay its consideration of the summary judgment motions pursuant to Federal Rule of Civil Procedure 56(d), on the grounds that the Employees' alleged lack of cooperation in discovery meant that more time was needed for discovery. However, the district court observed that Wilbur-Ellis's request was "informal" and "d[id] not provide any additional authority" for its argument. The district court further noted that "discovery has long been closed," and that because Wilbur-Ellis was trying to "revisit discovery issues that either were—or should have been—resolved long before," its request was "extremely tardy." Accordingly, the district court denied the request for a stay.

## D.

Upon reviewing the merits of the Employees' motions for summary judgment, the district court granted them in part and denied them in part. The district court dismissed most of Wilbur-Ellis's claims because Wilbur-Ellis could not provide sufficient evidence to support them. Regarding Wilbur-Ellis's trade secrets claims, the district court noted that Wilbur-Ellis "[did] not provide[] sufficient admissible evidence to create a triable issue on any of its trade-secret claims." Regarding its tortious interference claim, the district court noted that Wilbur-Ellis was "long on allegations and short on probative evidence to support a reasonable inference . . . [of] unjust[] interfere[nce]." And regarding Wilbur-Ellis's duty of loyalty claims, the district court found that Wilbur-Ellis "failed to adduce sufficient admissible evidence to support its most-serious allegations of disloyalty."

However, the district court denied summary judgment on a narrow subset of Wilbur-Ellis's duty of loyalty claims. In recognizing that the Employees admitted to "working for Simplot . . . while still employed at Wilbur-Ellis," the district court found that "a reasonable jury could . . . find that the defendants breached their duties

of loyalty to Wilbur-Ellis by surreptitiously engaging in dual employment . . . [and] award damages . . . [related to] duplicate or ill-gotten wages." Accordingly, the district court denied the Employees' motions for summary judgment as to the breach of loyalty claim for the two weeks the Employees were dual-employed (which the parties now call the Limited Breach Claim), although it granted their summary judgment motions "in all other respects."

E.

Following the district court's summary judgment order, the parties jointly moved to dismiss the Limited Breach Claim without prejudice. The district court noted that there were "telltale signs of an effort to avoid Rule 54(b) and 28 U.S.C. § 1292(b) and manufacture appellate jurisdiction," but it treated the joint stipulation as a "voluntary dismissal under Rule 41(a)(1)(A)(ii)." Then, relying on our prior decision in Hope v. Klabal, 457 F.3d 784, 789 (8th Cir. 2006), the district court observed that this voluntary dismissal "ma[de] the earlier partial summary judgment 'a final judgment for purposes of appeal, even though the district court had not so certified under [Rule] 54(b).'" (second alteration in original) (citation omitted). After the district court dismissed the case in its entirety in favor of the Employees, both parties appealed.

II.

First, Wilbur-Ellis challenges the district court's denial of its discovery-related motions. While Wilbur-Ellis did not list the discovery orders it challenges in its notice of appeal, "[o]rdinarily, a notice of appeal that specifies the final judgment in a case should . . . bring up for review all of the previous rulings and orders that led up to . . . that final judgment." In re Nat'l Warranty Ins. Risk Retention Grp., 384 F.3d 959, 964 (8th Cir. 2004) (citation omitted). Accordingly, we will "review [the] district court's discovery rulings narrowly and with great deference and will reverse only for a 'gross abuse of discretion resulting in fundamental unfairness.'" Bucklew v. Precythe, 883 F.3d 1087, 1096 (8th Cir.

-7-

2018) (citation omitted). We will review Wilbur-Ellis's arguments as they pertain to the district court's discovery orders in chronological order.

## A.

We first address the issues related to Wilbur-Ellis's attempt to compel third-party discovery from Simplot. Wilbur-Ellis initially challenges the magistrate judge's instruction at the May 2022 discovery conference that Wilbur-Ellis first seek discovery from the Employees before seeking it from Simplot. But Wilbur-Ellis did not object to this instruction at the discovery conference or raise the issue before the district court, so we may not consider it here. See Daley v. Marriott Int'l, Inc., 415 F.3d 889, 893 n.9 (8th Cir. 2005) ("[W]hen . . . a litigant could have tested a magistrate's ruling by bringing it before the district judge, but failed to do so . . . he cannot later leapfrog the trial court and appeal the ruling directly to the court of appeals." (second alteration in original) (citation omitted)). In any case, Wilbur-Ellis disregarded the magistrate judge's instruction and attempted to compel discovery from Simplot first anyway.

Wilbur-Ellis next argues that the district court erred in affirming the magistrate judge's order denying its motion to overrule the Employees' objection to its proposed third-party subpoena. Wilbur-Ellis contends that it should have been allowed to compel discovery from Simplot and that the district court erred by basing its decision "solely on its misguided ruling that Wilbur-Ellis had not sufficiently identified its trade secrets." Wilbur-Ellis also argues that identifying one's trade secrets is not a legal prerequisite to obtaining discovery in the first place.

We have held that a district court does not abuse its discretion when it denies a motion to compel for being "extremely broad in scope, both in terms of the period of time and the number of . . . documents" and when "the information sought . . . was, very probably, irrelevant." McGowan v. Gen. Dynamics Corp., 794 F.2d 361, 363 (8th Cir. 1986). Here, the district court did not abuse its discretion in affirming the magistrate judge's order. The magistrate judge observed that (a) she

was concerned that Wilbur-Ellis intended to conduct a "fishing expedition" for evidence on Simplot, (b) Wilbur-Ellis's disclosure "[did] not identif[y] any specific characteristics of the allegedly misappropriated trade secrets" but "apparently claim[ed] that everything [the Employees] encountered . . . at Wilbur-Ellis was a trade secret," and (c) Wilbur-Ellis "has not shown that all efforts to [obtain discovery] have been exhausted." While Wilbur-Ellis challenges the characterization of its evidence as being too general, it does not dispute that its disclosure list is full of broad descriptions such as "[d]ocuments and information regarding Wilbur-Ellis's business and market strategy," nor does it dispute the magistrate judge's finding that "[w]ith the exception of three customer names, the filing does not contain material that implicates confidentiality." Thus, given the numerous concerns of the magistrate judge and the fact that the disclosure document was "extremely broad in scope," see id., the district court acted within its discretion in affirming the magistrate judge's order, see Bucklew, 883 F.3d at 1096.

Wilbur-Ellis also generally challenges the district court's requirement that it specify what trade secrets were allegedly misappropriated; however, it does not specify the order to which this challenge applies. To the extent that Wilbur-Ellis challenges the magistrate judge's order that it "disclose, with specificity, the trade secrets it alleges were misappropriated," this challenge is waived, as Wilbur-Ellis did not object to this order before the district court. See Daley, 415 F.3d at 893 n.9. To the extent that Wilbur-Ellis challenges the district court's reasoning in affirming the magistrate judge's denial of Wilbur-Ellis's discovery motion, this challenge fails as well. Wilbur-Ellis supports its position by citing Ahern Rentals, Inc. v. EquipmentShare.com, Inc., 59 F.4th 948 (8th Cir. 2023), a case where we reversed a district court's dismissal of a trade secrets claim on the grounds that "allegations pled on information and belief are not categorically insufficient to state a claim . . . where the proof supporting the allegation is within the sole possession and control of the defendant." Id. at 954. But Ahern does not apply here because it only describes the pleading requirement for overcoming a motion to dismiss, id. at 953, which is a far lower burden than that required to establish a "gross abuse of discretion" for overturning a discovery order, Bucklew, 883 F.3d at 1096 (citation

omitted).  Furthermore, the district court's reasoning does not conflict with Ahern even in spirit.  Although the district court denied Wilbur-Ellis's motion for third-party discovery in this instance, it made clear that it "need not definitively decide" on a requirement for plaintiffs to "always identify [their] trade secrets with reasonable particularity" before obtaining discovery.  Instead, the district court merely found that specificity was required in the instant case, given the concerns that Wilbur-Ellis was, among other things, seeking to compel third-party discovery prematurely and potentially going on a "fishing expedition" for evidence.  Because nothing in Ahern suggests that this exercise of discretion is erroneous, much less a gross abuse of discretion, Wilbur-Ellis's reliance on this case is inapposite.

B.

Wilbur-Ellis's next challenge pertains to its motion to compel discovery from the Employees themselves; it argues that the district court erred in affirming the magistrate judge's order denying this motion.  However, before Wilbur-Ellis filed its motion to compel, the magistrate judge had issued an order stating that parties could not file a motion to compel "without first contacting the . . . magistrate judge to set a conference for discussing the parties' dispute."  Wilbur-Ellis does not dispute that it did not comply with this order, nor does it contest the validity of the order itself.  Thus, the district court did not abuse its discretion in affirming the magistrate judge's denial of the motion to compel on procedural grounds.  See, e.g., Adams v. Comm'r, 520 F. App'x 934, 936 (11th Cir. 2013) ("The denial of a discovery motion is not an abuse of discretion where it is based on the moving litigant's failure to follow the applicable discovery rules requiring good-faith participation in the discovery process.").  Because Wilbur-Ellis's procedural deficiency independently justifies our affirmance of the district court's decision, we need not reach the merits of Wilbur-Ellis's argument here.

## C.

Wilbur-Ellis also challenges the district court's denial of its request to stay its consideration of the Employees' summary judgment motions pursuant to Rule 56(d). "Under [Rule] 56(d), a court may defer consideration of a summary judgment motion or allow time for discovery '[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'" Marlow v. City of Clarendon, 78 F.4th 410, 416 (8th Cir. 2023) (second alteration in original) (citation omitted). "We review the denial of a Rule 56(d) motion for an abuse of discretion." Id. at 416-17.

Here, the district court found that Wilbur-Ellis's request was "extremely tardy" due to being filed long after discovery had closed, that it was "informal," and that it mentioned issues that were or should have been resolved at earlier stages in the litigation. Because Wilbur-Ellis does not challenge any of these findings on appeal, we are not persuaded that the district court abused its discretion. See id.

Additionally, even assuming that Wilbur-Ellis could not obtain the documents it needed in discovery, this shortcoming seems to be largely its own doing. As the magistrate judge noted, Wilbur-Ellis began discovery in a "backwards" manner by first seeking discovery from a third party rather than the Employees themselves; then, when Wilbur-Ellis finally did move to compel discovery from the Employees, it inexplicably neglected to first conference with the magistrate judge. Given that Wilbur-Ellis largely caused its own inability to obtain discovery, the district court was within its discretion to deny a stay. See id.

## III.

Next, both parties appeal the district court's summary judgment order. Wilbur-Ellis argues that the district court improperly granted summary judgment on a majority of its claims, while the Employees argue that the district court should have granted summary judgment in full. "We review the grant of summary judgment

-11-

de novo, affirming if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014) (citations omitted).

A.

Wilbur-Ellis first challenges the grant of summary judgment on its trade secrets claims under the DTSA and the NTSA.  Under the DTSA, "[t]o demonstrate misappropriation of trade secrets, [Wilbur-Ellis] must show, among other things, the existence of a protectable trade secret and misappropriation of that trade secret." MPAY Inc. v. Erie Custom Computer Applications, Inc., 970 F.3d 1010, 1016 (8th Cir. 2020).  The DTSA defines a "trade secret" as information that "the owner has 'taken reasonable measures to keep . . . secret' and . . . has economic value." Farmers Edge Inc. v. Farmobile, LLC, 970 F.3d 1027, 1033 (8th Cir. 2020) (citation omitted). The DTSA defines "misappropriation" as the "acquisition of a trade secret . . . by improper means" or "disclosure or use of a trade secret . . . without express or implied consent by a person who . . . used improper means."  18 U.S.C. § 1839(5). The NTSA similarly defines trade secrets and misappropriation.  See Farmers Edge Inc., 970 F.3d at 1033; Neb. Rev. Stat. § 87-502(2), (4).

Having carefully reviewed the record before us, we agree with the district court that there is no genuine dispute of material fact as to Wilbur-Ellis's trade secrets claims.  The district court observed that Wilbur-Ellis "paint[ed] with a broad brush, never clearly and adequately identifying the 'trade secrets' at issue, let alone how they were used or misused or the damages reasonably attributable to each defendant."  Referencing Wilbur-Ellis's disclosure of alleged trade secrets, the district court also stated that "Wilbur-Ellis's reliance on broad terms, general descriptions, and repeated, non-specific references . . . do not suffice. Without more, much of the information it designates as trade secrets also appears to be public or unprotected."

-12-

Nothing Wilbur-Ellis presents on appeal refutes the district court's characterization. Wilbur-Ellis contends, for example, that "[c]ustomer information, including particular needs and characteristics about the customer, warrant trade secret protection." But Wilbur-Ellis never explains what specific documents relating to customer information were misappropriated; which defendant allegedly misappropriated them; or how the information was misappropriated. Wilbur-Ellis also claims that two of the Employees "downloaded and accessed files stored on Wilbur-Ellis devices" during their last weeks of pay at the company, and that "[t]hese files included . . . highly sensitive information regarding Wilbur-Ellis's customers, financial information, and strategy." But again, Wilbur-Ellis does not specify what files were taken, what efforts Wilbur-Ellis took "to maintain [their] secrecy," or how the defendants acquired them using "improper means." See Neb. Rev. Stat. § 87-502(2). Additionally, because it is not hard to imagine that most documents at Wilbur-Ellis would be related to its "customers, financial information, [or] strategy," Wilbur-Ellis fails to rebut the district court's concern that Wilbur-Ellis "apparently claim[s] that *everything* [the Employees] encountered in their positions at Wilbur-Ellis was a trade secret." (emphasis added).

The only time Wilbur-Ellis mentions information that could constitute a trade secret is when it discusses SeedWare. Wilbur-Ellis explains that it "stored most confidential information in a database called Seedware," and "[a]ccess to SeedWare required a username and password, and employees were limited in the information to which they had access." However, while some of the Employees had access to SeedWare while working at Wilbur-Ellis, Wilbur-Ellis does not provide any evidence showing—nor does it even allege—that the Employees "acqui[red] [SeedWare] . . . by improper means" or "disclos[ed] [it] . . . without express or implied consent" using improper means. 18 U.S.C. § 1839(5). Thus, regardless of whether SeedWare is a trade secret, Wilbur-Ellis has not provided evidence that the Employees misappropriated it. See id.

Lastly, Wilbur-Ellis claims that the Employees' simultaneous departure for Simplot was a "coordinated attack" and that the Employees' improperly "reset[]

-13-

[their] electronic devices prior to returning them to Wilbur-Ellis." But Wilbur-Ellis merely makes these assertions without providing further explanation and, more importantly, it does not explain how these events were connected to any specific trade secret. Thus, because we agree with the district court's finding that Wilbur-Ellis "never clearly and adequately identif[ied] the 'trade secrets' at issue, let alone how they were used or misused," we hold that it did not err in granting summary judgment on Wilbur-Ellis's trade secrets claims.

B.

We next turn to the district court's grant of partial summary judgment on Wilbur-Ellis's common law duty of loyalty claims. The district court dismissed these claims, except to the extent that they pertained to the two weeks during which the defendants were being paid by both companies (i.e. the Limited Breach Claim). Following the district court's summary judgment order, and prior to this appeal, the parties jointly moved to dismiss the Limited Breach Claim without prejudice under Rule 41(a)(1).

Wilbur-Ellis contends that the district court should not have granted summary judgment on any portion of its duty of loyalty claims. On the other hand, the Employees argue that Wilbur-Ellis cannot maintain the Limited Breach Claim on appeal because it voluntarily dismissed it; they also argue the district court properly granted summary judgment on the rest of the duty of loyalty claims. Alternatively, the Employees argue that the district court should have dismissed the Limited Breach Claim on its merits at summary judgment.

1.

First, we agree with the Employees that Wilbur-Ellis's voluntary dismissal of the Limited Breach Claim deprives us of any power to adjudicate it. The parties' joint stipulation of dismissal provides that "pursuant to Rule 41(a)(1)(A), without a Court order, Plaintiff consents and Defendants stipulate to dismissal without

-14-

prejudice as to the Limited Breach Claim." Because "[t]he effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) 'is to render the proceedings a nullity and leave the parties as if the action had never been brought,'" Smith v. Dowden, 47 F.3d 940, 943 (8th Cir. 1995) (citation omitted), the Limited Breach Claim is not properly before us.

Wilbur-Ellis contends that it may still pursue the Limited Breach Claim in this appeal because, as stated in the joint stipulation of dismissal, "Defendants stipulate and agree that they will not (and waive any right to) . . . challenge the appealability of the Limited Breach Claim." But a defendant does not have the power to permit a plaintiff to appeal a claim it has voluntarily dismissed under Rule 41(a)(1), for "[t]he jurisdictional effect of . . . a voluntary dismissal [under Rule 41(a)(1)] deprives the court of any power to adjudicate the withdrawn claim." Id. Thus, we lack jurisdiction to address the merits of the Limited Breach Claim.

2.

Next, Wilbur-Ellis challenges the summary judgment order as it relates to the rest of its duty of loyalty claims. Under Nebraska law, "[i]t is well settled that '[a]n employer's right to demand and receive loyalty must be tempered by society's legitimate interest in encouraging competition.'" Dick v. Koski Pro. Grp., P.C., 950 N.W.2d 321, 366 (Neb. 2020), opinion modified on denial of reh'g, 953 N.W.2d 257 (Neb. 2021) (second alteration in original) (citation omitted). Further, "[a]n at-will employee with a fiduciary relationship with his or her employer may properly plan to go into competition with the employer and may take active steps to do so while still employed, and such an employee has no general duty to disclose such plans to the employer." Id. However, an "employee may not (1) appropriate the employer's trade secrets, (2) solicit the employer's customers while still working for the employer, (3) solicit the departure of other employees while still working for the employer, or (4) carry away confidential information, such as customer lists." Id. at 366-67. Nevertheless, "[t]o give rise to liability, the employee's disloyal conduct must be 'so harmful as to *substantially hinder* the employer in the continuation of

-15-

his business.'" W. Plains, L.L.C. v. Retzlaff Grain Co., 870 F.3d 774, 786 (8th Cir. 2017) (emphasis added) (citation omitted) (applying Nebraska law). Furthermore, "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Jones v. Wellpath, LLC, 77 F.4th 658, 663 (8th Cir. 2023) (alteration in original) (citation omitted).

Here, Wilbur-Ellis has not provided sufficient evidence in support of its duty of loyalty claims to survive summary judgment. The district court noted that "Wilbur-Ellis has failed to adduce sufficient admissible evidence to support its most-serious allegations of disloyalty, particularly given its burden to establish a substantial hindrance." The summary judgment record confirms this finding, as the defendants aver—and Wilbur-Ellis does not dispute—that Wilbur-Ellis never provided any documents in discovery when asked to "[p]roduce the documents, electronically stored or otherwise, evidencing or showing what Plaintiff maintains was . . . [a] breach of any duty owed to Plaintiff." The defendants also maintain, and Wilbur-Ellis does not contest, that Wilbur-Ellis never supplemented its disclosures relating to these discovery requests.

Nevertheless, Wilbur-Ellis alleges that several facts raise a genuine dispute as to its breach of duty claims. Wilbur-Ellis points out that "Simplot . . . extended job offers to three of the Defecting Employees"; that "[a]round the same time, Defecting Employees met with one of Wilbur-Ellis's key business partners"; and that the Employees "simultaneously provided resignation notices." But these facts show nothing more than the Employees' "plan to go into competition with the employer . . . while still employed," which they "ha[d] no general duty to disclose . . . to [Wilbur-Ellis]." Dick, 950 N.W.2d at 366. Employees may continue working for their employer even while they plan to leave for a competitor in the future, see id., and Wilbur-Ellis cites no case law, Nebraska or otherwise, holding that the mere resignation of a group of employees evidences a breach of the duty of loyalty. On the contrary, courts interpreting other states' case law have found that such activity does not raise a genuine factual dispute as to a breach of duty. See,

-16-

e.g., ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc., 402 F.3d 700, 716 (6th Cir. 2005) (affirming the grant of summary judgment on a breach of duty claim raised under Kentucky law because the plaintiffs "offer[ed] no explanation why ordinary employees of a company may not meet with each other, openly or 'clandestinely,' to plan for the opening of a rival company"); In re Pro. Home Health Care, Inc., 159 F. App'x 32, 34 (10th Cir. 2005) (noting that, in the context of Colorado law, "certain traditional actions taken by departing employees (e.g., . . . a firm partner leaving with associates) are not considered sufficient to constitute a breach of the duty of loyalty, absent an intent to injure the employer"). While Wilbur-Ellis contends that the Employees' simultaneous departure is comparable to the defendants' conduct in West Plains, where we found that there was a genuine dispute as to whether the defendants breached their duty of loyalty, this comparison is not apt, as there we specifically observed that the defendant employees "intended to . . . offer[] insider information to [the plaintiff's competitor]" and "provide[d] [competitors with] important information while they were still employed by [the plaintiff]."  870 F.3d at 786-87.  Wilbur-Ellis has not provided evidence to establish that similar conduct occurred here.

Wilbur-Ellis next argues that "while still employed by Wilbur-Ellis," the Employees "tried to hide their misconduct by wiping six of eight company-issued devices."  But the record contradicts this characterization of the Employees' motives; in the depositions Wilbur-Ellis cites, the Employees merely state that they reset their company devices to avoid leaving personal information on them or that they did not know it was against company policy.  As Wilbur-Ellis does not cite any other document, testimony, or other evidence showing that the Employees wiped their devices "to hide their misconduct," this contention is nothing more than a "[m]ere allegation[], unsupported by specific facts or evidence."  Jones, 77 F.4th at 663 (first alteration in original).  Additionally, regardless of the Employees' motive in wiping their devices, Wilbur-Ellis does not explain how these actions "substantially hinder[ed]" its operations, see W. Plains, 870 F.3d at 786 (citation omitted), as it does not allege, for example, that the wiping of the devices caused Wilbur-Ellis to permanently lose valuable data.

Finally, Wilbur-Ellis argues that the Employees "solicited employees, suppliers . . . and dealers to move to Simplot," and that three of the Employees admitted to doing this while still employed at Wilbur-Ellis. But while Wilbur-Ellis cites Gompert's deposition to establish this point, the deposition transcript only shows that he could not remember the substance of the conversations in which Wilbur-Ellis alleges he improperly solicited people—it does not support Wilbur-Ellis's conclusion. The only other evidence Wilbur-Ellis cites for this claim is its own self-serving deposition testimony, which is based entirely on hearsay, see Crews v. Monarch Fire Prot. Dist., 771 F.3d 1085, 1092 (8th Cir. 2014) ("At summary judgment, the requisite 'genuine dispute' must appear in *admissible* evidence." (citation omitted)), and even this testimony does not show that the Employees admitted to conducting improper solicitation. Thus, the district court did not err in concluding that Wilbur-Ellis "failed to adduce sufficient admissible evidence to support its . . . allegation[]" that the Employees improperly solicited other parties. See Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.").[3] Accordingly, the district court did not err in granting summary judgment to the Employees on Wilbur-Ellis's duty of loyalty claims.

C.

Wilbur-Ellis lastly challenges the district court's grant of summary judgment on its tortious interference claims. To prevail on a claim for tortious interference with a business relationship, a plaintiff must prove

---

[3]As mentioned previously, while the district court did give credence to the fact that the Employees "began working for Simplot and receiving a salary while still employed at Wilbur-Ellis," that part of the duty of loyalty claim (the Limited Breach Claim) was voluntarily dismissed.

(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

Thompson v. Johnson, 910 N.W.2d 800, 806-07 (Neb. 2018).

Here, the district court found that "Wilbur-Ellis's response is again long on allegations and short on probative evidence." As it further elaborated, "Wilbur-Ellis has a lot of suspicions about what it thinks happened behind the scenes but has not submitted sufficient evidence to permit a reasonable jury to find in its favor . . . or to attribute any part of its estimated . . . lost profits to any unjustified act by one of the defendants."

We agree with the district court. On appeal, Wilbur-Ellis does not point to any evidence outside its own hearsay-dependent deposition statements to show that the Employees committed "an unjustified intentional act of interference," nor does it offer evidence "pro[ving] that the interference caused the harm sustained." Id. at 807. Indeed, Wilbur-Ellis does not mention any specific act by any specific defendant as the basis for its tortious interference claims. And because its accusations of general misconduct are virtually identical to those underlying its misappropriation and duty of loyalty claims, these accusations are, similarly, no more than "[m]ere allegations, unsupported by specific facts or evidence beyond [its] own conclusions." Jones, 77 F.4th at 663 (first alteration in original) (citation omitted). Accordingly, we hold that the district court did not err in granting summary judgment on Wilbur-Ellis's tortious interference claims.

## IV.

For the foregoing reasons, we affirm the district court's discovery orders, its denial of Wilbur-Ellis's request to stay summary judgment, and its grant of the Employees' motion for summary judgment.

_____